[No. 13901.  Department One. — December 30, 1891.]

HUGH RODDAN, RESPONDENT, v. CARRIE O. DOANE, ADMINISTRATRIX, APPELLANT.

ESTATES OF DECEASED PERSONS — PRESENTATION OF CLAIMS — DEPOSIT WITH ATTORNEY'S CLERK — REJECTION. — The requirement of the statute, that claims against the estate of a decedent must be presented to the administrator before suit can be instituted, is for the benefit of the estate, and implies that an opportunity will be afforded to creditors to present their claims; and when a notice to creditors requires them to present their claims to the administratrix at the office of her attorney, the leaving of a claim at the attorney's office with the attorney's clerk, in the absence of the administratrix, is a sufficient presentation of the claim, and the failure of the administratrix to act upon it within ten days thereafter gives the creditor the right to consider it as rejected, and this right is not affected by the fact that the administratrix demanded proofs and vouchers.

ID. — MONEY HAD AND RECEIVED — ACTION AGAINST ESTATE OF DECEASED PARTNER — EVIDENCE — PAYMENT TO FIRM. — In an action by a subcontractor against the administratrix of the estate of one of a firm of contractors, to recover money alleged to have been had and received by the defendant's intestate as payment for work done for the state under a contract under which the plaintiff, as a subcontractor, was entitled to a fixed portion of the claims against the state, it is necessary

to show that the deceased partner received the money individually, and that it did not go to the firm; and evidence that the payment was made by the state to a bank upon the indorsement upon the state warrants by the firm name of the contractors, and that the deceased partner stated that he received all his money, without showing by whom the indorsement was made, or who received the money from the bank, or that the deceased was sole manager of the firm, is not sufficient to show that the deceased received individually any money belonging to the plaintiff, and that it did not go to the firm represented by the surviving partner.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*E. W. McGraw,* for Appellant.

*Young & Powers,* for Respondent.

TEMPLE, C. — Defendant appealed from the judgment on a bill of exceptions within sixty days after its rendition.

The action was for money had and received by defendant's intestate, and it is contended that the claim presented to the administratrix had not been rejected before the commencement of the action. The notice to creditors required them to present their claims to the administratrix at the office of E. W. McGraw, Esq., 318 California Street, San Francisco.

June 25, 1889, plaintiff went to the office indicated, and the administratrix, not being present, left his claim for her, and took a receipt for it, signed by McGraw, through his clerk. McGraw was an attorney at law, and the place indicated was his office, and presumptively his clerk was authorized to receive papers for him. But the notice did not require or authorize the presentation to. McGraw, but to the administratrix, at this office. Is such a presentation good, in the absence of the administratrix?

The precise question does not seem to have been passed upon by this court; but in *Bollinger* v. *Manning,* 79 Cal. 7, the court considered the sufficiency of a notice

requiring claims to be presented to the administrator at the office of his attorneys, " the same being his place for the transaction of the business of the estate." This was held to be a compliance with the code, which directs the administrator to publish a notice requiring presentation of claims " at the place of his residence or business, to be specified in the notice." The court said: " It seems to us that the words ' place of his business ' should be construed to include the place where the administrator transacts the business of the estate, though he may be engaged in transacting some kind of business elsewhere. To hold otherwise would often render it quite inconvenient for creditors to present their claims at all. For example, the administrator may live and be carrying on a farm many miles distant from the county seat, where most or all of the creditors reside, or he may live and be employed in a workshop in some obscure part of a city, not easily accessible."

The *rationale* of this decision goes the full length of respondent's contention. For to avoid the inconvenience supposed, it is necessary to hold good a presentation at the office while the administrator is absent at his farm or workshop. The requirement that claims must be presented before suit can be instituted is for the protection of the estate, and implies that an opportunity will be afforded to creditors to present their claims. Here the administratrix certainly did not expect to remain at McGraw's office, and it seems necessary to hold either that such a presentation is good in her absence, or that such a notice is void.

We think it must be held that such a presentation is good. We see no point in the suggestion that the claim was left with the clerk. The code requires that it be presented to the administrator, and does not authorize the attorney to act for him. It follows, also, that it must be held that the claim was presented when left at the office. It is important for the claimant to know when the claim was presented, and to be able to prove such fact. The administrator cannot prejudice the

claimants by requiring claims to be left with his attorney, to be by him presented at his convenience, or not at all. The claim having been duly presented on the twenty-fifth day of June, and not acted on for ten days, the claimant had the right to consider it rejected, and this right was not affected by the fact that the administratrix demanded proofs and vouchers.

The next important question raised is, whether the evidence shows that Marshall Doane did receive any money belonging to plaintiff or his assignors, Steinman and Roddan.

Doane & McBean contracted with the state of California to do work under the drainage act (Stats. 1880, p. 389), and Steinman and Roddan were subcontractors. The contract under which they performed work is not set out or proven, but McBean testified that they sublet to them a portion of the work; Steinman and Roddan were to furnish the material and do the work; that seven twelfths of $6,060.34, and two thirds of $4,179.10, belonged to them. He gave them an order on the controller for the amount, because they were to be paid in warrants.

The suit is against the estate of Marshall Doane, and the point is made in the answer that McBean is a necessary party. It is necessary for plaintiff to show, not that Doane and McBean received the money, but that it came to the personal possession of Marshall Doane.

The drainage act having been declared unconstitutional (*People* v. *Parks*, 58 Cal. 624), a contract was drawn purporting to be between Doane & McBean, as partners, of one part, and Steinman and Roddan of the other part, but it was signed by Doane individually.

This agreement specifies the amount due from first parties to second parties for work and materials, recites that the money is being withheld by the state and expenses will be incurred, and the parties therefore stipulate to pay the expenses in proportion to their claims, and "that after said claims shall have been fully adjusted and all expenses paid, and before any warrants

shall issue for the payment of the same, or any part thereof, the proceeds or residue of said sums of money shall be owned, held, and possessed as follows." The proportion in which the parties shall then be owners of the funds is then repeated.

The contract then sets out that the parties of the first part sell and assign to the parties of the second part their proportion of the claims to take effect from the date, Doane to represent and manage the claims without the power to alienate, except as to fifteen per cent, which he may dispose of without being accountable therefor.

July 22, 1889, McBean, surviving partner of Doane & McBean, executed a document wherein he states that he desired to ratify and confirm the conveyance by Doane above recited, and therefore " I hereby sell and assign and set over to Hugh Roddan . . . . all my right and interest of said firm of Doane in and to," etc., said proportion of the claim.

In 1885, the legislature passed an act appropriating money for the payment of these claims, and this act was held valid by this court. (*Miller* v. *Dunn*, 72 Cal. 462; 1 Am. St. Rep. 67.)

It would appear from these facts that plaintiff became the owner, as between himself and Doane and McBean, of a fixed proportion of the claims against the state, but here plaintiff's case seems to break down. There is no evidence at all that Doane individually received any money from the state on account of any claims in which plaintiff was interested.

The evidence which plaintiff claims establishes this essential fact is, — 1. The payment of the warrants by the state. These were all paid to the National Bank of D. O. Mills & Co., upon the indorsement of Doane & McBean, and presumably placed to the credit of that firm. The evidence fails to show whether the indorsements were made by Doane or McBean, or either of them, or who received the money from the bank. And 2. Certain statements of Doane, that he had received all his money without paying the fifteen per cent. These

declarations do not show that any money was received by Doane individually. They are all just as consistent with the idea that the money went to the firm, — when the surviving partner would be liable.

The evidence does not show that Doane had the sole management of the affairs of Doane & McBean, nor that McBean, after a few months, had nothing further to do with the management. On the contrary, it appears that he did participate, for we find that he gave an order on the controller in favor of plaintiff and himself which transferred to them warrants for more than five thousand dollars.

This finding of the court is properly excepted to, and we think is not sustained by the evidence.

The judgment should be reversed and a new trial had, and we so advise.

VANCLIEF, C., and FITZGERALD, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is reversed, and a new trial ordered.

Hearing in Bank denied.